'08 CIV 8060

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

JAY POMERANZ, on Behalf of Himself and All : CLASS ACTION
Others Similarly Situated, :
:
:
Plaintiff, : COMPLAINT FOR VIOLATION
v. : OF THE INVESTMENT
: COMPANY ACT OF 1940
:
THE PRIMARY FUND, RESERVE FUND :
RESERVE MANAGEMENT COMPANY, and : JURY TRIAL DEMANDED
RESRV PARTNERS, INC., :
:
:
Defendants. :
------------------------------------------------------------



SEP 17 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, for his Class Action Complaint, alleges the following upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by his attorneys, which included a review of Securities and Exchange Commission ("SEC") filings, news reports and other publicly available materials.

## NATURE OF THE ACTION

1. This action is brought on behalf of persons who owned shares in any class of the Primary Fund (the "Fund") and who had not redeemed their shares as of Tuesday, September 16, 2008, at which time the Fund halted redemption of shares.

2. The action is brought against the Fund, and affiliated entities, for deviating from the Fund's fundamental investment objective. Section 8 of the Investment Company Act of 1940 (the "ICA") directs an investment company to recite in its Registration Statement "all investment policies of the registrant . . ., which are changeable only if authorized by shareholder vote," as well as all policies that "the registrant deems matters of fundamental policy." 15 U.S.C. § 80a-8(b) (2) & (3). Section 13 prohibits a registered investment company from deviating from any such policies "unless authorized by the vote of a majority of its outstanding voting securities." 15 U.S.C. § 80a-13.

3. The Fund's stated investment objective is "to seek as high a level of current income as is consistent with the preservation of capital and liquidity."

4. The Fund deviated from its stated investment objective by sacrificing preservation of capital and liquidity in pursuit of higher yields. This strategy was exemplified by the Fund's disastrous and unreasonable concentration of $785 million (face value) in commercial paper issued by Lehman Brothers Holdings, Inc. ("Lehman"). Such concentration of these securities resulted in the Fund "breaking the buck" on September 16, 2008, when its net asset value (NAV) fell below $1.00, to $0.97. The bankruptcy of Lehman, which occurred on September 15, 2008, wiped out the entire value of the Fund's $785 million in Lehman issued commercial paper. This event represented only the second time in the history of money market funds that such a fund's NAV fell below $1.00. In fact, Standard & Poor's has stated that of the 525 US dollar-

1

denominated money market funds it covers, the Primary Fund is one of only three such entities that will be affected by Lehman's bankruptcy.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under § 44 of the Investment Company Act of 1940 (15 U.S.C. § 80a-43), 28 U.S.C. §§ 1331, 1332(d)(2), and 1367.

6. Venue is properly laid in this District under 15 U.S.C. § 80a-43. Many of the acts giving rise to the violations of law complained of herein, including the dissemination to shareholders of the Registration Statements, Proxy Statements, and Prospectuses, referenced herein occurred in this District. Moreover, defendants are located or headquartered in this District.

## PARTIES

7. Plaintiff Jay Pomeranz ("Plaintiff") is an individual residing in Nassau County, New York.

8. The Reserve Fund (the "Trust") has its headquarters at 1250 Broadway, New York, NY 10001-3701. The Trust is an investment trust organized under Massachusetts law. The Trust consists of a series of mutual funds, including the Fund. The Trust is managed by a Board of Trustees. The Trust and the Board of Trustees are responsible for filing with the SEC and disseminating to investors documents regarding the Fund. The Trust and the Board of Trustees are also responsible for the Fund's compliance with its stated investment objectives.

9. Defendant Resrv Partners, Inc. ("Resrv" or "Underwriter") is headquartered at 1250 Broadway, New York, NY 10001-3701. Resrv was at all relevant times the principal underwriter for shares of the Fund. Resrv is responsible for conducting due diligence with respect to the accuracy of representations in Registration Statements and Prospectuses filed with the SEC and mailed to investors with respect to the Fund. Resrv is the Trust's agent for the purpose of the continuous offering of the Fund's shares.

10. Defendant Reserve Management Company, Inc. ("Investment Advisor" or "Reserve Management") has its headquarters at 1250 Broadway, New York, NY 10001-3701. Reserve

Management is the investment advisor to the Fund. As the Investment Advisor, Reserve Management receives a management fee from the Fund. The Investment Advisor's management fees range from 0.81% to 0.46% of the Fund's net assets, depending on the share class. In 2007, The Investment Advisor received fees in excess of $92 million for its services advising the Fund. The Investment Advisor is responsible for adhering to the Fund's stated investment objective.

11. Defendant Primary Fund is a series of the Reserve Fund. The Fund is a member of the Reserve Fund family of funds and is registered under the ICA. The Fund is advised by the Investment Advisor and employs Resrv as principal underwriter, transfer agent and shareholder services agent. The Fund is issued in eleven Classes, as follows:

   a. Primary Fund Class R
   b. Primary Fund Investor Class I
   c. Primary Fund Investor Class II
   d. Primary Fund Investor Class III
   e. Primary Class Treasurer's Trust
   f. Primary Fund Liquidity Class I
   g. Primary Fund Liquidity Class II
   h. Primary Fund Liquidity Class III
   i. Primary Fund Liquidity Class IV
   j. Primary Fund Liquidity Class V
   k. Primary Fund Class Institutional

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all person or entities who owned shares in any class of the Primary Fund (the "Fund") and who had not redeemed their shares as of Tuesday, September 16, 2008, at which time the Fund halted redemption of shares. Excluded from the Class are the defendants herein, any subsidiaries or affiliates of the defendants, officers and directors of any of the defendants, heirs, successors and assigns of any of the defendants or their officers and directors, and any entity in which any defendant has a controlling or substantial interest.

13. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this

3

time and can only be ascertained through appropriate discovery, the Fund had over $64 billion in assets as of August 31, 2008. Plaintiff thereby concludes that there are thousands of members located throughout the United States in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Fund and its affiliates or its transfer agent and may be notified of the pendency of this action by mail.

14. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal and state laws that is complained of herein.

15. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

 (a) Whether the Fund deviated from an investment objective that could only be changed by a shareholder vote;

 (b) Whether the Fund invested in securities that were of greater risk than provided for in its investment objective;

 (c) Whether the Fund's investments were overly concentrated in certain securities;

 (d) Whether the Fund's acts as alleged herein violated the ICA;

 (e) Whether the non-Fund defendants caused the Funds to violate the ICA;

 (f) Whether the members of the Class have sustained damages, and, if so, what is the proper measure thereof.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. As the damages

suffered by any individual Class member may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in managing this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18. The Registration Statement and Prospectus dated September 28, 2007 ("Prospectus") for the Primary Fund (at page 2), reiterated the Fund's investment objective to "preserve capital":

> **INVESTMENT OBJECTIVES:**
> The investment objective of the Primary Fund, U.S. Government Fund, U.S. Treasury Fund and Reserve Liquid Performance Money Market Fund, (together the "Funds") is to seek as high a level of current income as is consistent with the preservation of capital and liquidity.

19. The same representation as to the Fund's investment objective was contained in each of the prior Prospectuses for the Fund, dating back to at least July 17, 1995, as well as in Statements of Additional Information incorporated by reference into the Prospectuses and the Fund's Annual Reports and Semi-Annual Reports. For example, the Fund's July 17, 1995 Registration Statement (at page 3) stated that the Fund's investment objective was "to seek as high a level of current income as is consistent with preservation of capital and liquidity."

### The Fund Substantially Deviates From Its Stated Investment Objective

20. On September 15, 2008, it was announced that Lehman would seek bankruptcy protection under Chapter 11 of the Bankruptcy Code. Lehman had been experiencing significant operating difficulty since the beginning of 2008 due its exposure to illiquid and significantly impaired assets, including home mortgages and related derivatives. Over the course of 2008 Lehman's share price declined significantly and the firm's capital position weakened. Faced with increasing difficulty raising capital, Lehman's commercial paper paid increased yields – reflecting investors' perception that such debt was riskier than other assets of similar type and duration.

5

21. For example, on July 28, 2008 *Bloomberg News* reported that "[t]he cost to protect Lehman's debt from default more than doubled this year" as measured by the cost of a credit-default swap used to protect $10 million in Lehman bonds for five years, which increased from $120,000 at the end of 2007 to $358,000 as of July 28, 2008.

22. These factors made the Fund's concentration of holdings in Lehman debt clearly contrary to its investment objective.

23. On September 16, 2008, Reserve Management issued the following press release, announcing a 3% reduction in the Fund's NAV and suspending redemptions due to a $785 million loss in value attributed to holdings of Lehman debt securities:

> The Board of Trustees of The Reserve Fund, after reviewing the unprecedented market events of the past several days and their impact on The Primary Fund, a series of The Reserve Fund and taking into account recommendations made by Reserve Management Company, Inc., the investment manager of The Primary Fund, approved the following actions with respect to The Primary Fund only:
>
> The value of the debt securities issued by Lehman Brothers Holdings, Inc. (face value $785 million) and held by the Primary Fund has been valued at zero effective as of 4:00PM New York time today. As a result, the NAV of the Primary Fund, effective as of 4:00PM, is $0.97 per share. All redemption requests received prior to 3:00PM today will be redeemed at a net asset value of $1.00 per share.
>
> Effective today and until further notice, the proceeds of redemptions from The Primary Fund will not be transmitted to the redeeming investor for a period of up to seven calendar days after the redemption. The seven-day redemption delay will not apply to debit card transactions, ACH transactions or checks written against the assets of the Primary Fund provided that any such transaction from an investor, individually or in the aggregate, does not exceed $10,000.
>
> The Primary Fund will continue to accept purchase orders.
>
> Effective tomorrow, September 17, 2008, the NAV for the Primary Fund will be calculated once a day at 5:00PM, New York time.

24. Also on September 16, 2008, Standard & Poor's issued a release indicating that it would downgrade its ratings of the Fund and highlighted that problems owing to Lehman's bankruptcy were unique (among 525 covered funds) to those money-market funds advised by Reserve Management and a municipal asset pool in Colorado (not marketed or sold to private investors):

> NEW YORK (Standard & Poor's) Sept. 16, 2008--Standard & Poor's Ratings Services said today that it has lowered its principal stability fund rating on the Reserve Funds - Primary Fund, Reserve International Liquidity Fund Ltd. ... to 'Dm' from 'AAAm' due to exposure to defaulted Lehman Brothers Holdings Inc. commercial paper.
>
> \* \* \*
>
> With the exception of the three funds, which paid out less than $1.00 per share NAV (i.e. 'broke the dollar') outlined above, no other principal stability rated funds are affected by exposure to Lehman. The majority of rated funds stopped investing in Lehman prior to Lehman's bankruptcy filing, and many others were rolling overnight (one-day) repos that were paid in full on Monday, Sept. 15, 2008. The remaining rated funds that held Lehman paper either had their exposures purchased out by their parent companies or are in the process of obtaining credit support agreements (CSAs). We currently assign principal stability fund ratings (PSFRs) to more than 525 money market-type funds in the U.S. and Europe. Assets of all funds with our PSFRs total more than $2 trillion.
>
> The rating actions taken on the Reserve Primary Fund & Reserve International Liquidity Fund Ltd. are based on each fund's exposure to debt securities issued by Lehman Brothers Holdings, Inc. These exposures totaled $750 million (face value) in Primary and $125 million exposure (face value) in the International Liquidity Fund. These holdings were valued at zero, and when this markdown was combined with the enormous redemptions experienced by the funds over the past two days, it resulted in a NAV payout of $0.97 per share.
>
> \* \* \*
>
> S&P principal stability fund ratings (PSFRs), also called money-market fund ratings, are generally assigned to SEC-registered (2a-7) money-market funds, government investment

pools, separate accounts, and other managed pools of fixed-income assets whose objective and investment policies are intended to provide a stable (i.e. $1.00 per share) NAV. PSFRs may also be assigned to non-U.S.-domiciled funds with an accumulating share value. PSFRs range from 'AAAm' (extremely strong capacity to maintain principal stability and to limit exposure to principal losses due to credit, market, and/or liquidity risks) to 'Dm' (failure to maintain principal stability resulting in a realized or unrealized loss of principal). The 'm' distinguishes the PSFR from our traditional debt ratings, which are usually not subscripted and that indicate our opinion of a borrower's ability to repay principal and interest on a timely basis. As part of our fund-rating process, we review holdings and summary information of principal stability-rated funds weekly.

Standard & Poor's fund credit quality and volatility ratings are based on its analysis of a fund's eligible portfolio investments and strategy, historical return volatility, and management. The seven-category credit quality rating scale ranges from 'AAAf' (highest level of protection) to 'CCCf' (least protection). The ratings from 'AAAf' to 'CCCf' may be modified by the addition of a plus (+) or minus (-) sign to show relative standing within the major rating categories.

Volatility ratings range from lowest volatility ('S1', with certain funds designated a plus sign {+} to indicate the fund's extremely low sensitivity to changing market conditions) to highest volatility ('S6'). As part of our fund rating process, we review holdings and summary information of fund credit and volatility rated funds monthly.

|  | TO | FROM |
|---|---|---|
| Reserve Funds - Primary Fund | Dm | AAAm |

25. A September 17, 2008 article in *The New York Times* ("Money Market Fund Says Customers Could Lose Money"), highlighted the fact that a money market fund's NAV falling below $1.00 was virtually unprecedented and further noted that despite its concentration of Lehman debt, the Defendants had recently touted their "cautious approach":

> In a new sign of market turbulence, managers of a multibillion-dollar money market fund said on Tuesday that customers might lose money in the fund, a type of investment that has long been considered as safe and risk-free as a bank savings account.
>
> The announcement was made by the Primary Fund, which had almost $65 billion in assets at the end of May. It is part of the

8

> Reserve Fund, a group whose founder helped invent the money
> market fund more than 30 years ago.
>
> The fund said that because the value of some investments had
> fallen, customers now have only 97 cents for each dollar they had
> invested.
>
> **This is only the second time in history that a money market
> fund has "broken the buck" -- that is, reported a share's value
> was less than a dollar.**
>
> \* \* \*
>
> The Primary Fund allowed its share price to fall below a dollar
> "after reviewing the unprecedented market events of the past
> several days and their impact" on the fund, the company said in a
> statement.
>
> Specifically, the fund's management, **which boasted as recently
> as July about its cautious approach to the current crisis,**
> determined that its stake in debt securities issued by Lehman
> Brothers Holdings, with a face value of $785 million, was
> essentially worthless, given the investment bank's filing for
> bankruptcy protection. As a result, the fund said, its per-share
> value fell to 97 cents a share.
>
> The fund's financial records also show that more than half of its
> portfolio on May 31 consisted of asset-backed commercial paper
> and notes from a host of issuers besides Lehman, few of them
> names likely to be familiar to the financial markets.
>
> \* \* \*
>
> Whenever money funds have run into trouble, they have been
> propped up by parent banks and investment managers that
> provided the necessary cash. The single exception was in 1994,
> when one small regional money fund reported a share price below
> a dollar, according to the Investment Company Institute.

(Emphasis added.)

26. The Fund's loss of 3% of its NAV is a direct result of the defendants' deviation from the stated investment objective, specifically by employing a strategy to sacrifice preservation of capital and liquidity in pursuit of higher yields. The defendants' improper actions are

9

underscored by the fact that of the 525 money-market funds covered by Standard & Poor's only two funds managed by Reserve Management, and one other fund, were adversely impacted by Lehman's bankruptcy. This event represented only the second time in the history of money market funds that such a fund's NAV fell below $1.00.

## COUNT I:
## FOR VIOLATION OF SECTION 13(a) OF THE INVESTMENT COMPANY ACT
## (Against All Defendants)

27. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein. This Count is asserted on behalf of members of the Class for violation of § 13(a) of the ICA, 15 U.S.C. § 80a-13(a).

28. The Defendants' conduct, as described above, deviated from the Fund's investment policy that was changeable only by a shareholder vote, and a deviation from a policy recited in the Funds' Registration Statement as a "fundamental investment policy" in that, as detailed above, the Fund failed to engage in a strategy that would "preserve capital."

29. The above-noted investments made in violation of a stated fundamental investment policy caused significant losses to the Fund's shareholders, as alleged above. As described above, Plaintiff and other members of the Class have suffered substantial damages in connection with losses in the Funds' value that resulted from the Funds' deviation from their stated fundament investment policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying Plaintiff as a representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

B. Appointing Wolf Popper LLP as Class Counsel;

C. Awarding compensatory damages in favor of Plaintiff and the members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D. Disgorging from Defendants for the benefit of the Class any management or other fees forfeited by Defendants' deviation from the Fund's fundamental investment objectives;

E. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

F. Awarding rescission of the Fund's shares purchased by Plaintiff and the Class; and

G. Such equitable, injunctive or other relief as deemed appropriate by the Court.

### JURY DEMAND

Plaintiff hereby demands a trial by Jury.

Dated: September 17, 2008

By: /s/

WOLF POPPER LLP

Lester L. Levy (LL 9956)
James A. Harrod (JH 4400)
845 Third Avenue
New York, NY 10022
Tel.: 212.759.4600
Fax : 212.486.2093

Attorneys for Plaintiff