GOODWIN PROCTER

Mark Holland
212.459.7152
MHolland@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

October 11, 2013

**BY ECF**

Hon. Paul G. Gardephe
United States District Judge
United States District Court
   for the Southern District of New York
40 Foley Square, Rm. 2204
New York, NY 10007

Re:   *In re The Reserve Fund Securities and Derivative Litigation*, No. 08-cv-8060 (PGG)

Dear Judge Gardephe:

On behalf of our clients, the Independent Trustees of the Primary Fund-In Liquidation (f/k/a the Reserve Primary Fund) (the "Fund"), we submit this letter pursuant to Section 11(b) of the Stipulation and Agreement of Settlement. Section 11(b) requires the Independent Trustees to submit a proposed budget of expenses anticipated to be incurred by the Fund after the final distribution of Fund assets to shareholders. That final distribution should take place approximately 60 to 90 days after the "Effective Date" of the Settlement, as that term is defined in Paragraph 36 of the Stipulation of Settlement. The proposed budget is attached to this letter as Exhibit A.[1]

The Fund currently has approximately $96.3 million in assets. The Independent Trustees anticipate that if the Court approves the Settlement (including this proposed budget) and the final distribution takes places early in 2014, approximately $64 million will be distributed to Fund shareholders. (That amount could be higher or lower depending upon when and how certain litigation is resolved or ended.)

For the reasons set forth below, the Independent Trustees currently recommend that $1,995,838 be withheld from the final distribution to pay for the costs associated with

---

[1]   This budget does not include amounts that may be held back in the Defense Fund referred to in Section 11(a) of the Stipulation of Settlement.

GOODWIN PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 2

completing that distribution, closing down the Fund, and complying with applicable laws and regulations. This amount would pay for the following anticipated costs:

| | | |
|---|---|---:|
| 1. | Liquidating Services Agent | $1,040,204 |
| 2. | Accounting | 60,000 |
| 3. | Legal | 210,000 |
| 4. | Independent Trustee Compensation | 72,000 |
| 5. | Other Vendors | 142,634 |
| 6. | Insurance | 200,000 |
| 7. | RMCI Record Retention | 96,000 |
| 8. | Contingency | 175,000 |
| | **TOTAL** | **$1,995,838** |

This proposed budget assumes that no pending or threatened litigation involving the Fund (such as opt-out claims) exists at the time of the final distribution. This recommended budget is based upon current conditions regarding the Fund, and should be revised as we get closer to the final distribution date.[2]

We discuss each of these categories in detail below.

1.  Liquidating Services Agent – *Crederian Fund Services LLC*

Crederian's estimated fee for providing services to the Fund following the final distribution comprises three parts. (1) During the twelve months following the distribution (the "check distribution period"), Crederian proposes to continue to charge its regular monthly fee of $48,025, for a total of $576,300. During this period, Crederian anticipates exceptionally heavy activity as checks are distributed, shareholders submit inquiries, lost checks are re-cut, uncashed checks are traced, tax forms are prepared, funds are escheated and the Fund is dissolved. During

---

[2] The Fund has been providing the SEC Staff with expense information in the past, and has agreed to provide the SEC Staff with a summary of expenses incurred each month until the Effective Date. The Fund will provide the Court with a quarterly summary of expenses until the Effective Date.

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 3

the check distribution period, Crederian also will be preforming many of the services typically performed by a settlement claims administrator.[3]  (2) During the six years following the check distribution period, Crederian will retain the records of the Fund for the period commencing November 24, 2010, in accordance with IRS and SEC regulations and this Court's Order dated November 18, 2010 (the "record-retention period").   This will include retaining both hard copy and digital records.  Certain services performed during the check distribution period, such as escheatment, may continue during the record retention period.  Crederian will also respond to shareholder and regulatory inquiries concerning the Fund and shareholder accounts.  The average monthly cost for this record retention is $5,262, for a total of $378,864.  (3) Crederian also anticipates incurring out-of-pocket expenses of $85,040 during the seven-year period discussed above.  These include payments to outside vendors for computer programming and tax reporting on Form 1099, as well as telephone, website maintenance, couriers, notaries, postage, etc.  A complete list of these out-of-pocket expenses is set forth in Exhibit A-1.

The Independent Trustees note that Crederian has done an excellent job since the Court appointed it as the Fund's Liquidating Services Agent in the autumn of 2010, and believe that Crederian's proposed fees and expenses (like all of the fees and expenses in this proposed budget) are fair and reasonable.

2.    Accounting – *KPMG*

KPMG provides tax compliance and related tax consulting services to the Fund.  KPMG anticipates charging $60,000 for services to the Fund following the final distribution.  This includes $50,000 for a final reconciliation of shareholder accounts (similar to the reconciliations KPMG has performed for every prior distribution, but more exhaustive because this will be the final distribution).  KPMG also will charge $10,000 for preparing the Fund's 2014 tax returns.  A more detailed explanation of KPMG's anticipated services is attached as Exhibit A-2.

3.    Legal

a.    *Willkie Farr & Gallagher LLP*

Willkie Farr & Gallagher LLP serves as counsel to the Fund.  They estimate that their legal fees for services performed after the final distribution will be $160,000.  This will comprise tax advice ($35,000) and corporate advice ($125,000), including legal advice in connection with dissolving the Fund and making the appropriate state law filings.

---

[3]  Crederian has quoted Class Counsel a fee of $85,000 for various services related to notice and claims administration.  This amount is in addition to the Crederian fees referred to here, and will be paid before the final distribution.

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 4

        *b.*  *Goodwin Procter LLP*

     Goodwin Procter serves as counsel to the Independent Trustees. Following the final distribution, the Independent Trustees anticipate that Willkie will perform most of the legal work in connection with closing down the Fund. The Independent Trustees have budgeted $50,000 for advice they may seek from Goodwin separate and apart from Willkie.

     The budget for legal fees assumes that *all* pending or threatened litigation (including regulatory actions) involving the Fund is over. If the *SEC v. RMCI* action, or the malpractice action RMCI has brought against Willkie, are not finally resolved by the time of the final distribution, or Fund shareholders opt-out of the settlement and threaten to pursue litigation, or any other litigation or regulatory investigation is threatened or commenced, additional amounts will need to be held back from the final distribution to cover anticipated legal fees associated with any such litigation.

    4.    Independent Trustee Compensation

     As the Court is aware, the Fund currently has three Trustees: Ronald J. Artinian (who serves as the Lead Trustee), Santa Albicocco, and William E. Viklund. All three plan to continue to serve until the final distribution is made. At that point, assuming all pending or threatened litigation involving the Fund is over, Ms. Albicocco and Mr. Viklund would resign, leaving only Mr. Artinian to supervise the post-distribution activities and the dissolution of the Fund.

     Crederian is a service provider to the Fund, and best practices would suggest that it be supervised during both the check distribution period and the record retention period. Mr. Artinian offered to perform that role, and the Fund retained Management Practices, Inc. ("MPI"), a well-regarded management consulting company that specializes in providing analyses and comparisons for independent directors of mutual funds, to recommend an appropriate amount to compensate Mr. Artinian for his services. Mr. Artinian agreed to serve during both the check distribution period and the record retention period for the amounts recommended by MPI. (A copy of MPI's report is attached as Exhibit A-3.) However, the Staff of the SEC's Division of Enforcement insisted as a condition to its not objecting to the Settlement that Trustee compensation following the final distribution be capped at $72,000. In order to satisfy the SEC Staff, Mr. Artinian has to agreed serve for the first six months after the final distribution for $72,000 (one-half of the amounts recommended by MPI for the full-year period). He would then step down.[4]

---

[4]   Mr. Artinian is willing to serve for a longer period for the amounts recommended by MPI should the Court deem such service appropriate.

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 5

Keeping in mind that having someone supervise Crederian would be consistent with best practices, the Trustees strongly suggested that since the SEC Staff objected to paying Mr. Artinian an amount that would cover more than six months of service, the Staff should assume responsibility for supervising Crederian and providing any assistance it may require in administering the Fund from the time Mr. Artinian's service ends until the expiration of the six-year record retention period. The SEC Staff has agreed to undertake that responsibility.

5.      Other Vendors

Crederian has identified four vendors whose services the Fund will require following the final distribution. Crederian has contacted each of these vendors and obtained their best estimates of the costs of these anticipated services.

> a. State Street will provide on-going accounting, custody, banking, and cash management services. Estimated cost: $45,134.
>
> b. Keane will provide escheatment services for unclaimed funds for all relevant jurisdictions. Estimated cost: $27,500.
>
> c. Pinnacle Data will provide check creation and mailing services for the final distribution. Estimated cost: $50,000.
>
> d. Thompson Reuters will provide tax (Form 1099) preparation and mailing services. Estimated cost: $50,000.

6.      Insurance

It is typical to obtain what is referred to as "tail" coverage to provide director and officer liability protection following the liquidation of an investment company, since there will be no assets remaining to indemnify relevant parties in the event of a claim. The insureds would be the former trustees and officers of the Fund, as well as Crederian. The Fund has had discussions with its insurance broker to procure a six-year $5 million policy from an affiliate of The Hartford for a total premium of approximately $200,000 (*i.e.* an average of $33,333 per year).

7.      RMCI Record Retention

This Court's Order dated November 18, 2010, which authorized the retention of Crederian as the Fund's liquidating services agent, provided that RMCI and Resrv Partners shall

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 6

be responsible for retention of the Fund's records prior to November 23, 2010 for the periods required by law, and that RMCI "shall be compensated for its reasonable costs and expenses in providing these services." RMCI's storage costs through February 28, 2013 are covered by the amounts it is to receive under the Settlement. RMCI incurs storage costs of approximately $3,500 per month, and its statutory obligation to retain records runs through November 30, 2016. Although no one questions the reasonableness of the costs RMCI is incurring for record retention, the Court's Order provides for their payment, and the Trustees believe these amounts are fair and reasonable, during discussions prior to the filing of the class settlement, the Staff of the SEC's Division of Enforcement objected to these payments and asked RMCI, as part of a broader agreement, to cap its storage costs at $72,000 (thereby absorbing over $85,000 in costs). RMCI has advised the Trustees that, while it continues to investigate ways to reduce its document storage costs, it currently does not believe such costs can be reduced to the cap sought by the SEC. This budget assumes that some of RMCI's record retention costs will be incurred after the final distribution date. As with many other expenses in this budget, the exact amount will have to be calculated closer to the date of the final distribution.

       8.    Contingency

Although the Trustees and Crederian have tried to anticipate every cost the Fund will incur after the final distribution to shareholders, there doubtless will be unanticipated expenses. The Trustees therefore deem it prudent to create a contingency of approximately 10% of the post-distribution budget, or $175,000, to deal with such expenses. Any amounts that are not used would, subject to the Court's approval, be donated to an appropriate charity or escheated to the relevant States.

This proposed budget reflects the Independent Trustees' best estimates based upon current information and conditions. With the Court's permission, if the Stipulation of Settlement is approved, the Independent Trustees will submit an updated revised budget for Court approval shortly before the final distribution occurs.

We thank the Court for its consideration. Should the Court have any questions regarding the proposed post-distribution budget, or require any further information, we will, of course make every effort to provide it.

Respectfully,

*Mark Holland*

Mark Holland

Enclosures

LIBNY/5274789.6

GOODWIN PROCTER

Hon. Paul G. Gardephe
October 11, 2013
Page 7


cc:    Nancy A. Brown, Esq.
       Michael D. Birnbaum, Esq.
       John Dellaportas, Esq.
       Robert M. Romano, Esq.
       John C. Browne, Esq.
       Tariq Mundiya, Esq.
       Niki Mendoza, Esq.