**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD 2011(PGG) |
| IN RE THE RESERVE PRIMARY FUND SECURITIES & DERIVATIVE CLASS ACTION LITIGATION | 08 CIV 8060 (PGG)<br>(Class Action) |

**THE INDEPENDENT TRUSTEES' MEMORANDUM IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND IN RESPONSE TO THE SOLE "OBJECTION"**

GOODWIN PROCTER LLP
  Mark Holland
  Mary K. Dulka
  Charles A. Brown
The New York Times Building
620 Eighth Avenue
New York, NY  10018
(212) 813-8800

*Attorneys for the Independent Trustees of*
*the Primary Fund-In Liquidation*
*(f/k/a The Reserve Primary Fund)*

Dated:  December 9, 2013

LIBNY/5295273.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 2

    The Fund's Distributions To Date ............................................................................ 2

    The Proposed Settlement ......................................................................................... 3

ARGUMENT .............................................................................................................. 6

I.     THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, REASONABLE AND ADEQUATE ................................................................... 6

    A.    Procedural Fairness ............................................................................ 7

    B.    Substantive Fairness ........................................................................... 7

        1.    The Payment to RMCI ......................................................... 8

        2.    The Defense Fund ............................................................... 12

II.    MR. FARRELL'S "OBJECTION" IS MERITLESS ...................................... 13

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)...................................................................13

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................7

*In re Drexel Burnham Lambert Group, Inc.*,
   130 B.R. 910 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992) ........................................13

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92(SAS), 2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011)......................................13

*Ott v. Fred Alger Mgmt., Inc.*,
   No. 11 Civ. 4418 LAP, 2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012) ................................11

*SEC v. RMCI*,
   09 Civ. 4346 (PGG), 2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ......................................12

*Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................6, 7

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013).............................6, 7

STATUTES AND RULES

15 U.S.C. § 77k ("Section 11 of the Securities Act of 1933").................................10, 11

Fed. R. Civ. P. 23(e) ...............................................................................1, 6

Fed. R. Civ. P. 23(e)(5)............................................................................13, 14

Mass. Gen. Laws Ann. ch. 156D, § 7.42 (West 2013) .................................................11

LIBNY/5295273.1

The Independent Trustees of the Primary Fund-In Liquidation (f/k/a The Reserve Primary Fund) (the "Fund") submit this memorandum in support of the motion for final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure of the proposed settlement set forth in the Stipulation and Agreement of Settlement dated August 14, 2013 (the "Settlement"), and in response to the November 22, 2013 "objection" letter sent to this Court by Charles J. Clark on behalf of Patrick J. Farrell, the former Chief Financial Officer of the Fund and Reserve Management Company, Inc. ("RMCI").

PRELIMINARY STATEMENT

Since the Fund "broke the buck" on September 16, 2008, the Independent Trustees have attempted to do everything in their power and consistent with their fiduciary duties to return as much money to Fund shareholders as quickly as possible.  This Settlement represents what is hopefully the final step in that process.

To date, the Fund has distributed approximately $50.7 billion, representing over 99% of its assets as of September 15, 2008, to shareholders.  The Fund currently has approximately $96 million in remaining assets.  Most of those assets are in an Expense Fund established by this Court, where they are subject to competing claims by shareholders, the Fund's former investment managers and its principals, and others.  The proposed Settlement, if approved, will resolve all of those competing claims, avoid millions of dollars in future Fund expenses, and permit over two-thirds of the Fund's remaining assets to be distributed to shareholders promptly after the Settlement becomes effective.  The Independent Trustees therefore believe that the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Fund and its shareholders.

## FACTUAL BACKGROUND

This Court is fully familiar with the facts of this case.  We briefly recount the efforts to distribute the Fund's assets to shareholders after the Fund "broke the buck" on September 16, 2008, and the effect the proposed Settlement will have on these efforts.

### The Fund's Distributions To Date

The Fund had approximately $51 billion in assets on September 16, 2008 (not including the value of the Lehman securities).  The Fund distributed approximately $47.1 billion, which represented over 92% of its assets, by October 2, 2009.[1]  Pursuant to the Fund's Plan of Liquidation, which was implemented subject to the supervision of the Securities and Exchange Commission ("SEC"), the Fund's remaining $3.5 billion in assets were placed in a special reserve to be used to satisfy (a) anticipated costs and expenses of the Fund, including legal and accounting fees; (b) pending or threatened claims against the Fund, its officers, and trustees; and (c) claims that could be made against the Fund's assets.  These included claims for indemnification and claims by certain shareholders that they should receive $1.00 per share on their investments at the expense of other shareholders.[2]

---

[1]  *See* The Reserve, *Reserve Primary Fund Distributes $1 Billion* (Oct. 2, 2009), http://www.primary-yieldplus-inliquidation.com/pdf/Press_Release_Primary_Fifth_Distribution_2009-10-02.pdf.  The Fund's Board of Trustees refused to engage in a "fire sale" of Fund assets in the difficult market that existed following the collapse of Lehman Brothers in the Fall of 2008.  Instead, the Board decided to allow most of the assets held by the Fund to mature, or, in certain instances, to authorize sales of those assets if the Fund could realize a profit, and then distribute those proceeds to shareholders as they became available.  *See* The Reserve, *Important Notice to Reserve Funds Investors* (Oct. 2, 2008), http://www.primary-yieldplus-inliquidation.com/pdf/ImportantNotice_Primary_Govt_FINAL_2008_1002.pdf.

[2]  *See* The Reserve, *The Primary Fund: A Statement Regarding Special Reserve Under the Plan of Liquidation* (Feb. 26, 2009), http://www.primary-yieldplus-inliquidation.com/pdf/PressRelease_PrimarySpecialReserve_FINAL_022609.pdf.

2

On November 25, 2009, this Court issued an Order in *SEC v. RMCI*, 09 Civ. 4346 (PGG) (the "*SEC Action*"), pursuant to an application by the SEC and supported by the Independent Trustees, concerning the distribution of the Primary Fund's remaining assets.[3]   That Order provided for a *pro rata* distribution of those assets and enjoined certain claims against the Fund and other parties named as defendants in litigation involving the Fund.[4]   The Order also established an Expense Fund to be used to satisfy potential claims against the Fund.[5]   Following that Order, the Fund distributed an additional $3.4 billion to shareholders.[6]

During the Spring of 2010, the Fund, with the Court's prior approval, sold all of the Lehman securities it held -- which had $785 million in face value -- for an average of approximately 22 cents on the dollar.   On July 16, 2010, the Fund distributed an additional $215 million to shareholders.   With that distribution, a total of $50.7 billion, or approximately 99.04% of Fund assets as of the close of business on September 15, 2008, had been returned to shareholders.[7]

### The Proposed Settlement

After the July 16, 2010 distribution, the Fund had approximately $108 million in assets remaining.   During the past three years, those assets have slowly dissipated as the Fund has paid management fees, accounting fees, conversion fees, Independent Trustee fees, insurance, legal expenses, and myriad other costs necessary to keep the Fund open while the remaining claims

---

[3]    *SEC Action*, ECF Doc. No. 202 ("November 2009 Order").

[4]    November 2009 Order ¶¶ 2-3.

[5]    November 2009 Order ¶ 5.

[6]    *See* The Reserve, *Reserve Primary Fund to Distribute $3.4 Billion* (Jan. 26, 2010), http://www.primary-yieldplus-inliquidation.com/pdf/Press_Release_Primary_Sixth_Distribution_012210.pdf.

[7]    *See* The Reserve, *Reserve Primary Fund to Distribute $215 Million* (July 15, 2010), http://www.primary-yieldplus-inliquidation.com/pdf/PrimaryDistribution_71510.pdf.

LIBNY/5295273.1

against the Fund's assets and related issues were litigated.[8]   Today, the Fund has approximately

$96 million in assets.[9]

These assets are subject to competing and contested claims by shareholders, RMCI and

the Bents, and others.[10]   RMCI and the Bents have asserted claims against the Fund seeking over

$72 million for management fees and expenses, legal fees, and interest.[11]   The Independent

Trustees have taken the position that the Fund should reimburse RMCI and the Bents

approximately $12 million for those fees and expenses.[12]   In addition, State Street Bank and

Trust Company ("State Street"), the Fund's custodian, has requested, and the Court has ordered,

that $2.5 million be set aside to cover potential indemnification claims it may have against the

Fund.[13]

---

[8]     On November 24, 2010, with the Court's approval, RMCI ceased to serve as the Fund's
investment manager and Crederian Fund Services LLC ("Crederian") became the Fund's
liquidating services agent.  *See* November 18, 2010 Order in the *SEC Action*, ECF Doc. No.
348.  One reason for this change was to reduce the expenses the Fund was incurring for
management services.

[9]     *See The Primary Fund-In Liquidation Schedule of Investments* (Dec. 6, 2013),
http://www.primary-yieldplus-inliquidation.com/dailyholdings/PrimaryDaily.pdf.

[10]    *See, e.g., SEC Action*, ECF Doc. Nos. 238-244, 264-270, 628-630, 633-635.

[11]    *See* Defendants' December 21, 2012 Memorandum of Law in Support of their Post-Trial
Motion for Relief Under Fed. R. Civ. P. 50(b), 59(e), and 60(a) and in Further Support of
their Pending Applications for Indemnification and Fees and Expenses, filed in the *SEC
Action* on February 13, 2013, ECF Doc. No. 628.

[12]    *See, e.g., SEC Action* ECF Doc. Nos. 254-255, 258, 631-632; December 6, 2010 Letter from
Mark Holland on behalf of the Independent Trustees to this Court in the *SEC Action*
enclosing the KPMG Report. A chart summarizing the relevant positions of RMCI and the
Bents, on the one hand, and the Independent Trustees, on the other, was attached as an
Appendix to the January 22, 2013 Memorandum of Law of the Independent Trustees of
Relief Defendant Primary Fund-In Liquidation (f/k/a The Reserve Primary Fund) in
Response to Plaintiff's and Defendants' Post-Trial Memoranda, filed in the *SEC Action* on
February 13, 2013 (ECF Doc. No. 631). This $12 million figure includes $855,573 for
Independent Trustee compensation advanced by RMCI, which was subject to verification.

[13]    *See SEC Action*, November 30, 2010 Order (ECF Doc. No. 351).

The proposed Settlement resolves all of these claims.  Under its terms, the Fund will pay RMCI a net amount of $19.95 million in satisfaction of all of its and the Bents' claims.[14]  State Street will be released, and its $2.5 million holdback will be available for distribution to Fund shareholders.  A "Defense Fund" will be established to reimburse RMCI and the Bents for future litigation costs they may incur in connection with the *SEC Action* and other litigation.  That amount will be $500,000 if the *SEC Action* is resolved, and $4 million if it is not.  The Independent Trustees have recommended that approximately $2 million be held back from the final distribution to cover the costs of that distribution, dissolving the Fund, and record retention.[15]  If the Court approves the payment of these amounts, as well as the requested fees and expenses of Class Counsel,[16] approximately $64 million, or two-thirds of the Fund's remaining assets, will be available for distribution to Fund shareholders promptly after the Settlement becomes effective.

The shareholders of the Fund appear to support the Settlement.  Only one shareholder, with a potential loss of less than $1,000, has opted out of the Settlement.  No class member or regulator has objected to the Settlement.  The only "objection" to the Settlement was contained in a November 22, 2013 letter from Charles J. Clark to this Court on behalf of Patrick J. Farrell, former Chief Financial Officer of RMCI and the Fund ("Farrell Letter").  Mr. Farrell, who acknowledges that he has received over $132,000 from the Fund and RMCI to cover his legal fees in connection with the SEC's investigation, complains that his lawyers have not been paid

---

[14]   The term "net payment" is not intended to refer to the ultimate tax treatment of these monies.

[15]   *See* October 11, 2013 Letter from Mark Holland on behalf of the Independent Trustees to the Court in this action (ECF Doc. No. 96).

[16]   The Independent Trustees take no position on Lead Plaintiff's November 11, 2013 Fee Motion in this action (ECF Doc. Nos. 99 and 100).

LIBNY/5295273.1

an additional $73,000 for legal fees and expenses he incurred in testifying at the trial in the *SEC Action*.  As discussed below, Mr. Farrell is not a class member and therefore lacks standing to object to the Settlement, and the basis for his demand is groundless.

## ARGUMENT

The Independent Trustees believe that the Settlement is in the best interests of the Fund and its shareholders and should be approved.  The Settlement provides significant benefits to shareholders, including the resolution of all remaining claims against the Fund, the elimination of substantial future expenses, and a prompt distribution to shareholders of at least two-thirds of the Fund's remaining assets.

## I.     THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, REASONABLE AND ADEQUATE

Under Rule 23(e) of the Federal Rules of Civil Procedure a Court should ensure that a class action settlement is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e); *see Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).  Courts should examine the procedural and substantive fairness of a proposed settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations and citation omitted).  As this Court has recognized, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Yuzary*, 2013 WL 5492998, at *4 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

LIBNY/5295273.1

A.      **Procedural Fairness**

In evaluating procedural fairness, courts should examine the negotiating process leading up to the Settlement. *Wal-Mart Stores*, 396 F.3d at 116; *Yuzary*, 2013 WL 5492998, at *4. This Court is painfully aware of how acrimonious this litigation has been. And as the Lead Plaintiff's November 11, 2013 Memorandum of Law in Support of Final Approval of the Settlement (ECF Doc. No. 98) and the accompanying November 5, 2013 Declaration of Layn R. Phillips (Former District Judge) In Support of Final Approval of Class Action Settlement[17] explain in detail, the proposed Settlement was negotiated at arm's length and is not a product of fraud or collusion. Those submissions demonstrate that the proposed Settlement is procedurally fair, reasonable and adequate.

B.      **Substantive Fairness**

In evaluating substantive fairness, courts should determine whether the terms of the settlement are fair, reasonable and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Yuzary*, 2013 WL 5492998, at *5 (citing *Grinnell*, 495 F.2d at 463). The Independent Trustees believe the Settlement as a whole, and in particular the payments to RMCI, are fair and

---

[17]   *See* November 11, 2013 Declaration of John C. Browne in Support of Motion for Final Approval of Settlement, Ex. A (ECF Doc. No. 101).

LIBNY/5295273.1

reasonable in light of the risks involved and benefits realized, and therefore are in the best interest of the Fund and its shareholders.

### 1.      The Payment to RMCI

The Settlement provides that Defendants will pay the Fund $10 million in cash, and simultaneously receive $29.95 million from the Fund in satisfaction of all claims for management fees and expenses, indemnification, and interest that RMCI and the Bents have made against the Fund. This will result in a net payment from the Fund to Defendants of $19.95 million.

Defendants previously have requested that this Court order the Fund to pay approximately $72 million to compensate them for (i) unpaid management fees and expenses incurred in managing the Fund between September 15, 2008 and November 23, 2010; (ii) indemnification of legal fees incurred in the *SEC Action*, and (iii) interest on those amounts.[18] The Independent Trustees have taken the position that the Fund should pay RMCI $11.94 million for unreimbursed fees and expenses incurred in managing the Fund between September 16, 2008 and November 23, 2010 and nothing for legal fees in the *SEC Action* or interest.[19] The proposed Settlement thus provides for a net payment to RMCI of $8 million more than the Trustees have recommended. The Independent Trustees believe that the payment of this amount is fair and reasonable for at least three reasons.

*First*, payment of an additional $8 million will eliminate any risk that the Fund may have to pay RMCI and the Bents up to $60 million more in claimed fees, expenses, indemnification and interest than the Independent Trustees have recommended. In effect, the Settlement resolves RMCI's and the Bents' claims for amounts over and above what the Independent Trustees have

---

[18]     *See supra* notes 11–12.

[19]     *See supra* note 12.

LIBNY/5295273.1

previously recommended for approximately 13 cents on the dollar.  The Independent Trustees believe that is a reasonable amount to pay to resolve those claims.

Defendants' applications for reimbursement of fees and expenses, indemnification for attorneys' fees, and interest raise numerous, and sometimes complex, issues.  The parties and the SEC have filed multiple submissions regarding these issues, and they have been *sub judice* for some time.  Although the Independent Trustees believe their positions are correct, they recognize that there can be no certainty as to how the Court will resolve these difficult issues.  There is also a distinct possibility that whichever party is dissatisfied with the Court's rulings might appeal.  Resolving these claims now for a small fraction of the amounts demanded eliminates both the risk of the Fund having to pay much larger amounts as well as the expense of keeping the Fund open until these issues are ultimately resolved.

*Second*, resolving the class action now will eliminate substantial future expenditures by the Fund, enabling more money to be paid to shareholders more quickly.  The Fund incurs significant expenses, averaging well over $100,000 per month, simply to remain open while the various issues and litigations involving the Fund are resolved.  These include monthly fees to Crederian, the Independent Trustees, and State Street, as well as insurance premiums, legal fees, accounting fees, and the various other expenses necessary to operate a registered investment company that is the subject of extensive litigation.[20]

As the Court is aware, this class action is still in its early stages.  If the Settlement is not approved, it would take many years for this case to be litigated through a trial and appeal.  Keeping the Fund open during that time would cost millions of dollars.  Settling the case now saves those amounts and enables them to be distributed to Fund shareholders.

---

[20]   The Trustees will separately submit to the Court a summary of expenses the Fund has incurred in 2013.

*Third*, Court approval of the Settlement will save the Fund millions of dollars in potential indemnification costs.  The Fund's Declaration of Trust provides for indemnification, including in appropriate circumstances the advancement of legal costs, for present or former trustees or officers of the Fund who are sued "by reason of the fact" that they served as officers or trustees, absent a finding of "disabling conduct" (*i.e.*, willful malfeasance, bad faith, gross negligence or reckless disregard of duties).[21]  Defendants Bruce Bent Sr., Bruce Bent II and Arthur Bent signed the Fund's registration statement in their capacities as officers of the Fund and have been accused, in this class action, of violating Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, for misrepresentations in that registration statement and its prospectus.[22]  As the Independent Trustees previously have acknowledged, to the extent the Bents have been sued in their capacities as officers of the Fund, they could have a claim for indemnification against the Fund.[23]  It could cost the Fund millions of dollars in indemnification payments for the defense of these Section 11 claims.  The proposed Settlement avoids this result.

In addition, RMCI and the Bents have brought third-party claims against the Independent Trustees.  The Independent Trustees believe that those claims are meritless, for numerous reasons.  For example, they are barred by this Court's November 25, 2009 Order, which enjoins

---

[21]  *See* The Reserve Fund Amendment Number Two to and Restatement of the Declaration of Trust, dated December 10, 1986 ("Declaration of Trust"), SEVENTH at ¶ 11 (attached as Exhibit 7 to the December 21, 2012 Declaration of John Dellaportas in Support of Defendants' Post-Trial Motion for Relief Under Fed. R. Civ. P. 50(b), 59(e), and 60(a) and in Further Support of their Pending Applications for Indemnification and Fees and Expenses, filed in the *SEC Action* on February 13, 2013, ECF Doc. No. 630).

[22]  *See* Consolidated Class Action Complaint ¶¶ 194-196, ECF Doc. No. 50.

[23]  *See* The Independent Trustees' January 25, 2010 Memorandum in Response to Defendants' Application for Indemnification Expenses, filed in the *SEC Action* (ECF Doc. No. 254), at 4.

LIBNY/5295273.1

any action against the Fund's Trustees (among others) for indemnifiable conduct.[24]  Further, the derivative claim on behalf of the Fund for breach of fiduciary duty is defective because the Bents failed to make the requisite pre-suit demand on the Fund's Board, as required under Massachusetts law.[25]  The Bents' direct claims for indemnification and contribution fail to state any contractual, statutory or other basis upon which the Independent Trustees must indemnify the Bents.  And RMCI's direct claims for unjust enrichment, breach of contract, promissory estoppel, fraudulent inducement and tortious interference based upon the Independent Trustees' refusal to pay RMCI and the Bents all the amounts they claim they are owed simply do not state a claim for intentional bad faith.[26]  Nevertheless, the Fund would have to indemnify the Independent Trustees for legal fees and expenses incurred in defending against these third-party claims.  Although the Independent Trustees believe the Court would give these claims short shrift, any extended defense could prove costly.  The Settlement avoids these expenses, as well.

The Independent Trustees believe that any one of the above factors -- elimination of the risk that RMCI and the Bents would prevail on their claims for substantial fees, expenses, legal fees, and interest; avoidance of substantial future operating expenses; or elimination of the indemnification obligations to the Bents for their defense of the Section 11 claims in this class action, and to the Independent Trustees for their defense of the third-party claims -- would justify

---

[24]   *See* February 6, 2013 Letter from Mark Holland on behalf of the Independent Trustees to the Court in this action.

[25]   *See* Mass. Gen. Laws Ann. ch. 156D, § 7.42 (West 2013) ("[n]o shareholder may commence a derivative proceeding until . . . a written demand has been made upon the corporation to take suitable action"); *see also Ott v. Fred Alger Mgmt., Inc.*, No. 11 Civ. 4418 LAP, 2012 WL 4767200, at *9 (S.D.N.Y. Sept. 27, 2012) (failure to comply with Massachusetts' pre-suit demand requirement mandates dismissal of the complaint).

[26]   *See, e.g.,* Transcript from April 6, 2011 Court Conference in *SEC Action*, filed with the Court on April 28, 2011 (ECF Doc. No. 367), at 37:10-39:12 (where the Court noted that it had not yet resolved the parties' disputes about RMCI's claims for management fees).

LIBNY/5295273.1

the payment of an additional $8 million to RMCI and the Bents.  The combination of all three of those factors makes the proposed Settlement fair, reasonable and adequate to the Fund's shareholders.

### 2.   The Defense Fund

The Settlement also provides for the creation of a "Defense Fund" of up to $4 million to cover the future defense costs of the Bents in the *SEC Action* and other litigation.  This amount will be reduced to $500,000 if the *SEC Action* is resolved prior to the Final Approval Hearing.[27]

In September 2013, the Court resolved the parties' post-trial motions in the *SEC Action* and assessed appropriate penalties.[28]   It therefore would appear to be in the best interests of the Fund and its shareholders for the parties to the *SEC Action* to resolve any remaining differences before the December 16, 2013 Final Approval Hearing in this action.  If they do so, an additional $3.5 million will be available for distribution to Fund shareholders.

If the parties to the *SEC Action* do not resolve their differences, and the SEC or Defendants pursue an appeal from this Court's September 2013 Order, the inclusion of the $3.5 million in the Defense Fund will resolve all future claims the Bents may have against the Fund for indemnification.  Rather than delay the final distribution to Fund shareholders while the Fund's future indemnification obligations in the *SEC Action* are litigated, the Independent Trustees determined that creation of a Defense Fund now of a specific, relatively modest amount, to facilitate the prompt distribution of a much larger amount to Fund shareholders, is in the best interests of all concerned.

---

[27]   Settlement ¶ 11(a).

[28]   *See SEC Action*, 2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ("September 2013 Order") (ECF Doc. No. 648).

LIBNY/5295273.1

## II.     MR. FARRELL'S "OBJECTION" IS MERITLESS

The only "objection" to the Settlement was the November 22, 2013 Farrell Letter.  In that letter, Patrick J. Farrell, the former Chief Financial Officer of RMCI and the Fund, does not contend that the proposed Settlement is unfair, unreasonable, or inadequate.[29]   Nevertheless, he urges the Court to reject the Settlement, which would allow for the prompt distribution of over $64 million to Fund shareholders, because his attorney has not been paid $73,000 in legal fees. Mr. Farrell claims that the Fund and RMCI are obligated to indemnify him for those fees, which he incurred in connection with testifying at trial in the *SEC Action*.

Mr. Farrell is not a class member and therefore lacks standing to object to the proposed Settlement.[30]   The Class is defined to include only those who "purchased" or "held" shares of the Fund during the relevant period, and specifically *excludes* officers of RMCI or the Fund.[31]   Rule 23(e)(5) provides that "[a]ny *class member* may object" to a proposed settlement.  Fed. R. Civ. P. 23(e)(5)  (emphasis added).   Thus, "[o]nly Class members have standing to object to the Settlement of a class action," and non-class members lack such standing.  *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992).[32] Since Mr. Farrell is not a member of the Class, and is in fact specifically excluded from the

---

[29]    *See* Farrell Letter at 10 ("Mr. Farrell does not have a view as to whether the proposed Settlement is appropriate or not with regard to the class members or any of the other interested parties").

[30]    According to the Fund's records, Mr. Farrell is not a shareholder in the Fund.

[31]    Settlement ¶ 1(g).

[32]    *Accord Cent. States Se. and Sw.  Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d Cir. 2007) ('Because CareFirst is not a class member, it does not have an affected interest in the class Plaintiffs' claims against Medco so as to be able to assert its objections on behalf of its Plans"); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92(SAS), 2011 WL 3792825, at *1 (S.D.N.Y. Aug. 25, 2011) (holding that *pro se* objector "falls outside the definition of a class member, and therefore lacks standing to object to the settlement on that basis").

13

Class, he has no standing under Rule 23(e)(5) to object to the Settlement.  For this reason alone, his "objection" should be disregarded.

In addition, Mr. Farrell has failed to provide adequate documentation to support his contention that the Fund should pay some portion of the claimed legal fees.  Mr. Farrell first requested that the Fund pay a portion of those fees in March 2013, long after they had been incurred.[33]  As noted, the Fund is only obligated to indemnify individuals who incur legal fees "by reason of the fact" that they incurred those fees because they served as officers or Trustees of the Fund.[34]  The Independent Trustees therefore asked Mr. Farrell's attorney to provide adequate documentation to demonstrate what portion of those fees he incurred in his capacity as an officer of the Fund, as opposed to an officer of RMCI.  Mr. Farrell's attorney responded by providing the redacted bills that he now attaches to his "objection."[35]  The Independent Trustees determined that those redacted bills did not adequately demonstrate that Mr. Farrell incurred any legal fees in his capacity as an officer of the Fund.  (For example, it is impossible to determine from the redacted bills whether the meetings Mr. Farrell had with the SEC Staff to prepare his trial testimony concerned his role as an officer of RMCI or as an officer of the Fund.)

---

[33]  A significant portion of those legal fees appear to have been incurred in connection with several meetings that Mr. Farrell and his attorney held with the Staff of the SEC to prepare his testimony for trial.  Mr. Farrell never notified the Fund or the Independent Trustees of those meetings in advance or otherwise requested that the Fund agree to pay for the legal fees and expenses incurred in connection with those meetings before they took place.

[34]  *See supra* note 21.  The Farrell Letter repeatedly refers to a purported resolution passed by the Board of Trustees of the Fund obligating the Fund "to pay 50% of all legal fees incurred by officers of the Primary Fund…in the course of the investigation and litigation."  (Farrell Letter at 4-5; *see id.* at 10 n.8.)  The Independent Trustees are not aware of any such resolution, and there is no copy of that purported resolution attached as an exhibit to the Farrell Letter.

[35]  *See* Farrell Letter Ex. 4.

LIBNY/5295273.1

The Independent Trustees therefore repeatedly asked Mr. Farrell, through telephone conversations between counsel, to provide additional information in sufficient detail that the Independent Trustees could ascertain what fees Mr. Farrell incurred in his capacity as an officer of the Fund, as opposed to legal fees he incurred in his capacity as an officer of RMCI or in some other capacity.[36]   Mr. Farrell never provided information regarding these fees in a form satisfactory to the Independent Trustees.[37]   Indeed, Mr. Farrell's attorney claimed at one point that it would be "virtually impossible" to provide the information the Independent Trustees had requested.  Any attempt by Mr. Farrell to try to allocate those fees between the Fund and RMCI at this late date therefore should be subjected to careful scrutiny.

For these reasons, Mr. Farrell's "objection" should be disregarded.

## CONCLUSION

For the foregoing reasons, and for the reasons expressed by Lead Plaintiff and Lead Counsel in their papers submitted in support of preliminary and final approval of the Settlement, the Independent Trustees respectfully request that the Court grant final approval of the Stipulation and Agreement of Settlement dated August 14, 2013 and enter an Order and Final Judgment substantially in the form submitted by Lead Plaintiff.

---

[36]   *See* Farrell Letter Ex. 5.

[37]   This information is especially important because the legal fees for Mr. Farrell in connection with his testifying at trial in the *SEC Action* were much higher than the fees incurred by another person who served as an officer of both the Fund and RMCI and testified at trial. Specifically, the legal fees for Ms. Crowley, who was the Secretary of the Fund and General Counsel to RMCI, to testify at trial totaled approximately $10,000.

LIBNY/5295273.1

Dated:  December 9, 2013

Respectfully submitted,

**GOODWIN PROCTER LLP**


By: /s/ Mark Holland

    Mark Holland
    Mary K. Dulka
    Charles A. Brown
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Tel:  (212) 813-8800

*Attorneys for the Independent Trustees of the*
*Primary Fund-In Liquidation*
*(f/k/a The Reserve Primary Fund)*

16

CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.


/s/ Mark Holland
Mark Holland

17